IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
Case No. 1:22-cv-597

JENNIFER DUNBAR, President of the )
Cabarrus Republican Women, )
  )
    Plaintiff, )
  )     COMPLAINT AND
v. )     JURY DEMAND
  )
ADDUL RAHMAN EL ALI, individually )
and in his official capacity as Chairman )
of the Cabarrus County Republican )
Party; JACK LAMBERT, individually )
and in his official capacity as Vice )
Chairman of the Cabarrus County )
Republican Party; CLAY MAGUIRE, )
individually and in his official capacity )
as Secretary of the Cabarrus County )
Republican Party; BENITA CONRAD, )
individually and in her official capacity )
as Treasurer of the Cabarrus County )
Republican Party; SCOTT ELLIOTT, )
individually and in his official capacity )
as Immediate Past Chairman of the )
Cabarrus County Republican Party; )
PARISH MOFFITT, individually and in )
his official capacity as Finance Chairman )
of the Cabarrus County Republican Party;)
KEVIN CRUTCHFIELD, individually )
and in his official capacity as Member )
of the Cabarrus County Republican )
Party Executive Committee; )
DARRIN GAMRADT, individually )
and in his official capacity as Member )
of the Cabarrus County Republican )
Party Executive Committee; )
ANITA BROWN, individually and in her )
official capacity as Member of the )
Cabarrus County Republican Party )

Executive Committee; MARY INGRAM, )
individually and in her official capacity )
as Member of the Cabarrus County )
Republican Party Executive Committee; )
BETTY LAPISH, individually and in her )
official capacity as Member )
of the Cabarrus County Republican )
Party Executive Committee; )
BRITT McINTYRE, individually and )
in her official capacity as Member of the )
Cabarrus County Republican Party )
Executive Committee; JACOB ABEL, )
individually and in his official capacity )
as Member of the Cabarrus County )
Republican Party Executive Committee; )
ROBERT FREEMAN, JR., individually )
and in his official capacity as Member of )
the Cabarrus County Republican Party )
Executive Committee; and the )
CABARRUS COUNTY REPUBLICAN )
PARTY, )
)
      Defendants. )
_____ )

Plaintiff Jennifer Dunbar, President of the Cabarrus Republican Women, files this Complaint against the above-named defendants (collectively, "Defendants") and respectfully alleges, upon information and belief, as follows:

## INTRODUCTION

1.    This is a case about pervasive sex discrimination against women by the Cabarrus County Republican Party that has become so egregious it is now threatening to deprive a longtime activist of her County Party leadership position and tarnish her good name.

2.     Defendant Addul Rahman El Ali ("Defendant Ali" or "Chairman Ali") is the current Chairman of the Cabarrus County Republican Party.  He seems to have a problem with women—or at least, with women who wish to be treated as equals, and specifically with Plaintiff Jennifer Dunbar, President of the Cabarrus Republican Women ("CRW").  His actions continue a recent pattern by some men in the leadership of the Cabarrus County Republican Party.

3.     Mrs. Dunbar holds an *ex officio* seat on the Cabarrus County Republican Party's Executive Committee due to her presidency of the Cabarrus Republican Women.  The Executive Committee of a County Party is granted extensive rights under North Carolina state law related to the filling of vacant offices and ballot positions, making it a powerful body.

4.     In recent years, certain male leaders in the Cabarrus County Republican Party, including Chairman Ali, have manifested hostility and animus toward the CRW.  In 2019, the County Party even unjustifiably refused to seat the CRW's duly elected president as an *ex officio* member of the County Party's Executive Committee for four months, while at the same time immediately seating the (18-year-old male) president of the Republican Men's Club on the Executive Committee.

5.     Against this background of sex discrimination, on July 18, 2022, Mrs. Dunbar received by email an "official notice" from Defendant Maguire,

Secretary of the Cabarrus County Republican Party. It was signed by Chairman Ali and a mostly male group of members of the County Party's Executive Committee. The "official notice" purports to require that Mrs. Dunbar appear on August 2, 2022, before the Executive Committee to defend herself against ambiguous charges of "gross inefficiency," which—when distilled to their essence—really assert nothing more than that Mrs. Dunbar is guilty of not submitting herself and the Cabarrus Republican Women to Chairman Ali's will.

6. Appeal has been made, even in the days prior to the filing of this lawsuit, to the leadership of the North Carolina Republican Party for intervention in this matter. Inexplicably, the State Party has declined to stop Defendants from proceeding against her. Therefore, judicial intervention is the only avenue that remains.

7. Political parties are not purely private entities when they undertake certain functions related to elections. To the contrary, federal courts have a long history rooting out and remedying invidious discrimination by political parties in the electoral process.

8. The present case presents such an instance of invidious discrimination based on sex by the leadership of the Cabarrus County Republican Party, and judicial relief is therefore respectfully sought.

Case 1:22-cv-00597-LCB-JLW   Document 1   Filed 07/29/22   Page 4 of 35

## THE PARTIES

9.     Plaintiff Jennifer Dunbar is a citizen and resident of Cabarrus County, North Carolina.  She is the current President of Cabarrus Republican Women, a federated Republican club, affiliated with the North Carolina Federation of Republican Women.  She brings this case to vindicate her rights, the rights of the CRW, and the rights of the women who will succeed her in office.

10.     Defendant Addul Rahman El Ali is the current Chairman of the Cabarrus County, North Carolina, Republican Party, and a citizen and resident of Cabarrus County, North Carolina.  Upon information and belief, he is also known as Rahman Saunders, Rahman Sanders, and Addul Ali Soto, among other names.  He is sued in both his individual and official capacities.

11.     Defendant Jack Lambert is the current Vice Chairman of the Cabarrus County, North Carolina, Republican Party, and a citizen and resident of Cabarrus County, North Carolina.  He is sued in both his individual and official capacities.

12.     Defendant Clay Maguire is the current Secretary of the Cabarrus County, North Carolina, Republican Party, and a citizen and resident of Cabarrus County, North Carolina.  He is sued in both his individual and official capacities.

Case 1:22-cv-00597-LCB-JLW   Document 1   Filed 07/29/22   Page 5 of 35

13.     Defendant Benita Conrad is the current Treasurer of the Cabarrus County, North Carolina, Republican Party, and a citizen and resident of Cabarrus County, North Carolina.  She is sued in both her individual and official capacities.

14.     Defendant Scott Elliott is the Immediate Past Chairman of the Cabarrus County, North Carolina, Republican Party, and a citizen and resident of Cabarrus County, North Carolina.  He is sued in both his individual and official capacities.

15.     Defendant Parish Moffitt is the current Finance Chairman of the Cabarrus County, North Carolina, Republican Party, and a citizen and resident of Cabarrus County, North Carolina.  He is sued in both his individual and official capacities.

16.     Defendant Kevin Crutchfield is currently a member of the Executive Committee of the Cabarrus County, North Carolina, Republican Party, and a citizen and resident of Cabarrus County, North Carolina.  He is also the presumptive Representative-Elect for North Carolina House District 83, as he is the Republican nominee, and he has no opponent in the upcoming 2022 general election.  He is sued in his individual capacity and in his official capacity as a member of the Executive Committee of the Cabarrus County Republican Party, not as a presumptive member of the General Assembly.

Case 1:22-cv-00597-LCB-JLW   Document 1   Filed 07/29/22   Page 6 of 35

17.     Defendant Darrin Gamradt is currently a member of the Executive Committee of the Cabarrus County, North Carolina, Republican Party, and a citizen and resident of Cabarrus County, North Carolina.  He is sued in both his individual and official capacities.

18.     Defendant Anita Brown is currently a member of the Executive Committee of the Cabarrus County, North Carolina, Republican Party, and a citizen and resident of Cabarrus County, North Carolina.  She is sued in both her individual and official capacities.

19.     Defendant Mary Ingram is currently a member of the Executive Committee of the Cabarrus County, North Carolina, Republican Party, and a citizen and resident of Cabarrus County, North Carolina.  She is sued in both her individual and official capacities.

20.     Defendant Betty Lapish is currently a member of the Executive Committee of the Cabarrus County, North Carolina, Republican Party, and a citizen and resident of Cabarrus County, North Carolina.  She is sued in both her individual and official capacities.

21.     Defendant Britt McIntyre is currently a member of the Executive Committee of the Cabarrus County, North Carolina, Republican Party, and a citizen and resident of Cabarrus County, North Carolina.  She is sued in both her individual and official capacities.

22.     Defendant Jacob Abel is currently a member of the Executive Committee of the Cabarrus County, North Carolina, Republican Party, and a citizen and resident of Cabarrus County, North Carolina.  He is sued in both his individual and official capacities.

23.     Defendant Robert Freeman, Jr., is currently a member of the Executive Committee of the Cabarrus County, North Carolina, Republican Party, and a citizen and resident of Cabarrus County, North Carolina.  He is sued in both his individual and official capacities.

24.     Defendant Cabarrus County Republican Party comprises as members all registered Republicans in Cabarrus County, North Carolina.  It is governed by the *Plan of Organization of the Republican Party of Cabarrus County, North Carolina* as well as the State Party's Plan of Organization.  It is the entity officially recognized as the County Republican Party by the North Carolina Republican Party and by North Carolina elections officials.

25.     Defendants were acting under color of state law at the time of the events that give rise to the causes of action asserted herein and continue to act under color of state law.

26.     Defendants approved of, directed, and/or ratified the acts, policies, practices, customs, and/or procedures of their personnel or agents that deprived and are continuing to deprive Mrs. Dunbar of her rights as set forth in this complaint.

8

27. Plaintiff and all of the Defendants are capable of suing and being sued under state and federal law.

28. Each of the natural persons named as parties is over the age of 18.

## JURISDICTION AND VENUE

29. This Court may properly exercise personal jurisdiction over the parties.

30. The Court has both general and specific jurisdiction over Defendants.

31. This Court has federal question jurisdiction over Mrs. Dunbar's claims under federal law pursuant to 28 U.S.C. §§ 1331 and 1343 and 42 U.S.C. § 1983.

32. Mrs. Dunbar's state law claims are properly before this Court pursuant to 28 U.S.C. § 1367(a) because those state law claims are so related to the claims in the action that are within the Court's original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

33. This Court is authorized to grant a declaratory judgment under the Declaratory Judgment Act, 28 U.S.C. §§ 2201-02, implemented through Rule 57 of the Federal Rules of Civil Procedure.

34. This Court is authorized to grant Mrs. Dunbar's prayer for injunctive relief pursuant to Fed. R. Civ. P. 65.

Case 1:22-cv-00597-LCB-JLW   Document 1   Filed 07/29/22   Page 9 of 35

35. Venue is properly laid in this court pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2) because it is a judicial district in which a defendant resides as well as a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred.

36. This complaint has been timely filed prior to the running of the applicable statutes of limitations and repose.

37. Any and all conditions precedent the bringing of this suit have been satisfied, and Mrs. Dunbar's claims are ripe for review and decision.

## FACTS

### *A History of Sex Discrimination*
### *by the Cabarrus County GOP*

38. The Cabarrus County Republican Party's problem with sex discrimination worsened under Chairman Ali, but it did not begin with him.

39. In fact, some of the Party's problems with sex discrimination in recent years can be traced to before 2017 (a time when Chairman Ali was still a Democrat and not even affiliated with the Cabarrus County Republican Party).

40. There has long been a problem with male members of the local GOP leadership making sexist comments, criticizing and denigrating women's political events, and trying to prevent women's events from even occurring.

10

41.     The result has been a two-tiered system wherein men are treated far more favorably by the Cabarrus County Republican Party than women, especially when it comes to placing individuals in positions of power.

42.     This sex discrimination has been especially pronounced toward the Cabarrus Republican Women, a federated Republican club, affiliated with the North Carolina Federation of Republican Women.

43.     The North Carolina Federation of Republican Women ("NCFRW") is an organization separate from the North Carolina Republican Party, though the two entities do, of course, work together closely to advance the causes of the Republican Party generally.  The NCFRW has chapters across the state, including the Cabarrus Republican Women in Cabarrus County.

44.     There is also a North Carolina Federation of Republican Men, ("NCFRM"), which has a similar structure as the NCFRW and a similar relationship with the North Carolina Republican Party.

45.     Both the NCFRW and the NCFRM are often referred to as "auxiliary" organizations.  The North Carolina Republican Party does not exercise governance or control over these auxiliary organizations, as they are considered separate and distinct entities with their own leadership structures, rules, procedures, budgets, and organizational formalities.

46.     Following the North Carolina State Republican Party's Plan of Organization, the Cabarrus County Republican Party's Plan of Organization

11

has long provided a seat on its Executive Committee to the President of the Cabarrus Republican Women and similarly provided a seat to the chairman or president of the local men's auxiliary.

47. Under the Cabarrus County Republican Party's Plan of Organization, the President of the Cabarrus Republican Women holds her seat on the Executive Committee *ex officio* and by virtue of being the President of the county Republican women's organization, not due to any separate appointment or election to the Executive Committee by the leaders or membership of the County Republican Party.

48. The granting of a seat on the County Party's Executive Committee to the President of the Republican Women does not give the County Party any right or authority to govern the actions of the Republican Women. Instead, the Cabarrus Republican Women remains a separate and distinct organization from the Cabarrus County Republican Party.

49. For several years, Presidents of the Cabarrus Federated Women rarely attended meetings of the County Party's Executive Committee and generally maintained distance from it. This passivity seems to have pleased leaders of the Cabarrus County Republican Party. The County Party knew, however, the incoming President for 2019-20 would be more vocal and involved. Because this CRW President could be expected to insist on her equal rights as

12

a member of the Executive Committee, the male leadership of the County Party resisted and delayed seating her for *four months*.

50. The failure to automatically seat this President of the Cabarrus Republican Women is especially egregious because her membership on the Executive Committee is automatic under the County Party's own Plan of Organization. No vote is necessary. During the four months of delay, Defendants demanded a copy of the CRW's charter. Upon information and belief, no such similar request was ever made of the Republican Men's Club.

51. In November 2021, Mrs. Dunbar was unanimously elected President of the Cabarrus Republican Women. After learning this news, Chairman Ali expressed great frustration to many people and used expletives like the "f-word" in his outbursts, because he knew that she, too, would not stand for second-class treatment on the Executive Committee. When the meeting at which she was to assume her seat on the Executive Committee commenced, he took the Executive Committee (excluding Mrs. Dunbar) into a closed session for approximately fifteen minutes before reluctantly agreeing to her being seated.

52. The same County Party leadership has also tried to prevent and undermine events hosted by the Cabarrus Republican Women. For example, men from the County Party strongly objected when the CRW announced it would have a booth at the September 2019 County Fair. Women from the CRW

were repeatedly peppered with questions by these men as to why they wanted to have a booth, and the County Party took various steps, hoping to deprive them of their booth, even after the CRW explained why it was needed.

53.     The issue of "party disloyalty" is one that, ostensibly the State and County plans of organization take seriously.   Under the County Plan of Organization, any registered Republican who publicly supports a non-Republican over an endorsed Republican in an election can be disqualified from holding party office in the future for up to five years.

54.     "Party disloyalty," however, is apparently a thing of no consequence when it means supporting an Unaffiliated *male* candidate over a Republican *woman*.   That is essentially what occurred in a 2019 city council race.   Two members of the Executive Committee openly endorsed and supported the Unaffiliated male candidate over the Republican woman candidate, but they did not receive any form of party discipline.   Chairman Ali (who was then in leadership, but not yet chairman) defended their actions and helped prevent any consequences from befalling the Executive Committee members who had supported the non-Republican man.   Of note, the two arguably "disloyal" Executive Committee members were both women, but they were disloyal in the "right way"—that is, by supporting a man over a woman.

55.     Emblematic of the County Republican Party's crumbling organization, it printed only 1500 sample ballots for 2020 General Election, a

woefully inadequate supply that was quickly depleted. When a female Republican candidate printed her own sample ballots, at her own expense, along with the appropriate legend required by law, the male leadership of the County Republican Party responded with great hostility.

56.    In retaliation for her actions, Defendant Kevin Crutchfield changed the locks on the local Republican Party headquarters, thereby prohibiting this candidate from having access to the headquarters (a privilege she had possessed up to that point) and preventing her from getting her campaign supplies that were inside. Furthermore, members of the County GOP leadership defamed the female candidate by falsely claiming she had stolen sample ballots belonging to the County Party, and Defendant Parish Moffit was sent to a precinct polling place in an effort to intimidate her and take her own sample ballots away from her.

57.    In the most recent 2022 primary election, Chairman Ali provided very strong support to the male candidate over a female candidate in the Republican primary for a District Court judgeship. Even though the male candidate was the incumbent judge, many voters supported the female candidate, not only based on an assessment of relative qualifications, but also because the male candidate would be required to resign his position approximately fifteen months into his four-year term, thereby unnecessarily

creating a vacancy due to North Carolina's mandatory retirement age for judges.

58.    In June 2022, the County Party held a meeting on the issue of school board endorsements.  Many parents were in attendance.  At the beginning of the meeting, a woman from the audience politely asked about the process and related issues.  In response, Chairman Ali refused to let her speak and promptly ejected the parents and others in attendance from the building for a closed session, with Defendant Gamradt calling the police twice (for no reason) at Chairman Ali's direction.

59.    Chairman Ali has a longtime practice of attending functions hosted by the Cabarrus Republican Women, often bringing a number of people with him.  Neither Mr. Ali nor any of the others he brings with him will pay an admittance fee, and Mr. Ali will often dismissively tell the women working the admissions table words to the effect of, "I'll get that to you later."  Despite his promises on these occasions, he does not pay the Cabarrus Republican Women for admission to its events.  CRW members have seen this and remarked that it makes them feel deemed because they would never think of going to a County Party or Men's Club event without paying the admissions fee.

60.    In one specific instance in May 2022, Chairman Ali came to a CRW fundraiser, which was to support a women's charity.  Attendees were asked to

pay $10.00 and bring a baby gift. Chairman Ali neither paid the $10.00 nor brought a gift.

61. The Cabarrus County Republican Party has also undertaken a practice, accelerated by Chairman Ali, of placing less qualified men in positions of authority in the party. Some of these men have been teenagers or in their early 20s, and they have lacked substantial real-life experience generally or experience in politics specifically. Far more qualified women have been passed over for these positions in favor of these men. This phenomenon is especially troubling, not only because of its sexism, but also because the County Party has serious legal, financial, and regulatory obligations that it must attend to, including managing a relatively sizable budget, complying with state campaign finance laws (including accurately tracking and reporting contributions in compliance with state law), and working with the local Board of Elections on matters of election administration.

62. This attitude has certainly not meant that all women are excluded from positions in the County Party. Those women who are accepted into party positions, though, are not treated equally and must submit to the will of the male leadership, especially Chairman Ali.

### *Current Sex Discrimination*
### *Against Mrs. Dunbar*

63.     Chairman Ali believes the Cabarrus Republican Women, including Mrs. Dunbar, must do as they are told by him, even though the County Party has no supervisory authority or control over the Cabarrus Republican Women. He does not appear to hold the same controlling attitude toward the Republican Men's Club.

64.     Chairman Ali's hostility to Mrs. Dunbar is especially ironic given her treatment of him when he first became involved with the local GOP. While some existing members were suspicious of his previously being a Democrat and his criminal record (he has several arrests and even a conviction for resisting an officer in December 2011), Mrs. Dunbar took special efforts to make him feel welcome in local party politics.

65.     Chairman Ali has, however, now taken aim at Mrs. Dunbar. He recently organized several members of the Executive Committee to issue an "official notice" that was undated but emailed to Mrs. Dunbar on July 18, 2022. The individual Defendants named in this lawsuit were listed as having "signed" the notice, though their names were only typed, not signed in ink or included through some form of electronic signature.

66.     Copied on the July 18 email to Mrs. Dunbar were other members of the Executive Committee who had not signed the notice.

18

67. The notice asserts four charges of "gross inefficiency" and states that Mrs. Dunbar will be given the opportunity to defend herself at a meeting of the Executive Committee, to be held at 6:30 pm, on August 2, 2022, at 96 McGill Ave. NW, Concord.

68. Apparently recognizing the extreme ambiguity of a phrase like "gross inefficiency," the notice *attempts* to define the term:

> Per guidelines from the Chief Council [*sic*] of the North Carolina Republican Party: "Gross inefficiency is characterized by habitual neglect of power and duties in a position... A member of the County Executive Committee acting outside the will of the Committee could be viewed as neglect of that member's powers and duties."

69. The notice then lists the four alleged bases of Mrs. Dunbar's "gross inefficiency:"

    a. As the first ground, Defendants complain that the Cabarrus Republican Women will be hosting a forum for school board candidates and allowing all Republican candidates to attend; Defendants want the CRW to exclude those candidates they have not endorsed;

    b. In an echo of the first charge, the second charge alleges that it is "gross inefficiency" for the CRW—again, a totally separate organization—to host a forum for school board

19

candidates at all (even though it would be using its own resources and members to do so);

c. The third charge alleges that Mrs. Dunbar "took it upon [her]self to use [her] official capacity as a member of this [Executive] committee to make a public comment" regarding an incident that occurred June 6. Mrs. Dunbar is not aware of what comment this is referring to, but it is entirely false that she used her "official capacity" as a member of the Executive Committee to say anything because she never does that; and

d. Finally, the exact nature of the fourth charge is hard to discern, but the gist appears to be that at unspecified times since November 2021 Mrs. Dunbar has made generally negative comments, including words to the effect of not being "on the same team as the Executive Committee," to fellow members of the Executive Committee.

70. Thus, in at least the first two charges, Defendants are attempting to use their removal power to control the Cabarrus Republican Women, even though it is a totally separate and independent organization from the County Party.

71.     In the latter two charges, Defendants are trying to control Mrs. Dunbar's entire ability to think and speak independently of Chairman Ali and the Executive Committee.

72.     As further evidence of the sex-based discrimination present in the first two charges, the president of the Cabarrus County Republican Men's Club has allowed non-party endorsed Republican school board candidates to speak during at least one of his club's events, and his action has apparently not brought any adverse response from Defendants against him, clearly illustrating the double standard.

73.     Overlooking the fact that Mrs. Dunbar has yet to have a chance to defend herself, Defendants' notice to Mrs. Dunbar goes on to state: "In sum, your actions represent a habitual neglect of your power and duties as a member of the Executive Committee.  You have actively worked contrary to the efforts of the Executive Committee and its policies—in fact, you have openly stated your desire to work against the Committee.  This will not be tolerated."

74.     It could not be clearer, of course, that the result of its hearing is a *fait accompli*.  The Executive Committee will all but certainly vote to remove Mrs. Dunbar if it is allowed to hold its hearing on Tuesday, and it will have done so with no legitimate basis whatsoever.

75.     Upon information and belief, if Mrs. Dunbar is removed from her seat on the Executive Committee, the Cabarrus County Republican Party will

refuse to seat any future designee of the Cabarrus Republican Women who intends to fully exercise her rights and privileges as a member of the County Party Executive Committee. First, the Plan of Organization only recognizes the CRW President as being a member of the Executive Committee, and moreover the only CRW designee who would be acceptable to the County Party would be one who passively submits to the will of Chairman Ali.

### Political Parties as Actors
### Subject to Constitutional Limitations

76. Beginning in the middle of the Twentieth Century, federal courts began closely examining how the organization and functioning of political parties perpetuated racial discrimination. Thus, federal courts struck down primary election schemes by parties that discriminated on the basis of race. These cases reasoned that the state unconstitutionally endorses and adopts discrimination when it accepts onto its ballots the results of racially discriminatory primaries.

77. Beyond these so-called "white primary cases," the U.S. Supreme Court has also found that a political party's county-based scheme for selecting nominees violated the principle of one person, one vote. And, it has found unconstitutional a requirement that voters pay a registration fee to participate in a primary election.

78. Though courts are not inclined to meddle with the internal affairs of a political party generally, when state law grants political parties special rights and privileges related to the nomination of candidates and ballot access, the parties' procedures under those laws constitute state action, subject to constitutional limitations and protections.

79. North Carolina law regarding the power of County Party Executive Committees is just such an example of special rights and privileges that, once conferred by state law, come with a requirement that they be discharged in a manner consistent with the United States Constitution.

80. Under North Carolina election law, County Party Executive Committees elect the individuals to fill vacancies in such offices as State Senate and State Representative, *see* N.C. Gen. Stat. § 163-11, and in filling certain vacancies on the ballot occurring after a nomination but before the election, *see* N.C. Gen. Stat. § 163-114.

81. The powers given by state law to these County Party Executive Committees is therefore enormous and, in some cases, their actions constitute the election of an official for the balance of the prior officeholder's term.

82. By excluding Mrs. Dunbar from a process of this nature for discriminatory reasons because of her sex, Defendants are effecting a gender gerrymander of the Executive Committee for those times it may be called upon to exercise these statutory powers.

23

83.     This suit then is not asking the Court to intervene in an intraparty dispute, but rather to preserve the constitutional integrity of a process state statutory law has already specifically put in place for the election of the people's representatives and other government officials.

### *Danger of Irreparable Harm*

84.     There is danger in Mrs. Dunbar losing her seat on the County Party Executive Committee, even if for only a time, because important decisions related to the November 2022 elections will soon be made. Moreover, if there is a vacancy in an elected office or on the ballot that requires being filled by the Cabarrus County Executive Committee during that time, she will be deprived of her right to participate in that process.

85.     If Defendants were to succeed in removing Mrs. Dunbar, they can be expected to not seat a substitute representative from the Cabarrus Republican Women, leaving the seat open indefinitely. This would be injurious to the Cabarrus Republican Women who would lose a voice and vote on the County Party's Executive Committee. It would also deprive the Executive Committee of one of the few members currently working on this very issue of sex discrimination (and related questions) in the County Party.

86.     Thus, absent immediate relief, there would be injury not only to Mrs. Dunbar, but also to the legal rights and interests of the Cabarrus

Republican Women and others in the event there is a need for the Executive Committee to exercise its considerable statutory powers.

## COUNT I:
### Sex Discrimination in Violation of the Equal Protection Clause of the Fourteenth Amendment (42 U.S.C. § 1983)

87. The allegations of the preceding paragraphs are realleged and incorporated herein by reference.

88. The Fourteenth Amendment to the United States Constitution provides, in relevant part, that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const., amend. XIV, § 1. The Equal Protection Clause protects individuals against intentional, arbitrary discrimination.

89. The rights secured by the Fourteenth Amendment are enforceable pursuant to 42 U.S.C. § 1983.

90. At all times relevant to this claim, Defendants were acting under color of state law.

91. The Fourteenth Amendment prohibits discrimination on the basis of sex unless such action can be shown to serve important governmental objectives and to be substantially related to achievement of those objectives. Defendants can make no such showing. Instead, Mrs. Dunbar is being targeted for removal from her position because of her sex.

25

92.    There is direct evidence of sex discrimination in this case, and Defendants cannot show a legitimate, nondiscriminatory reason for their actions against Mrs. Dunbar.

93.    Mrs. Dunbar is qualified for her position on the Executive Committee; despite being qualified, she is being targeted for discrimination and removal from office; meanwhile, men with the same or lesser qualifications in the County Party are treated more favorably than is Mrs. Dunbar.

94.    Defendants do not have legitimate, nondiscriminatory reasons for removing Mrs. Dunbar from her position.

95.    Defendants' stated justifications for seeking to remove her are mere pretext.  Indeed, the written allegations against her in the formal notice are so diaphanous they prove that Defendants' true motives are unspeakable—and illicit.

96.    As a direct and proximate result of Defendants' violations of Mrs. Dunbar's rights, Mrs. Dunbar has sustained injuries cognizable at law and in equity, and she is therefore entitled to the relief set out in the prayer for relief below.

## COUNT II:
### Violation of the Due Process
### Clause of the Fourteenth Amendment
### (42 U.S.C. § 1983)

97. The allegations of the preceding paragraphs are realleged and incorporated herein by reference.

98. The Fourteenth Amendment to the United States Constitution provides, in relevant part, that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const., amend. XIV, § 1.

99. The rights secured by the Fourteenth Amendment are enforceable pursuant to 42 U.S.C. § 1983.

100. At all times relevant to this claim, Defendants were acting under color of state law.

101. At all times relevant to this case, Mrs. Dunbar possessed a liberty or property interest in her position on the Executive Committee of the Cabarrus County Republican Party, a position to which she is entitled under the County Party's own governing document (the Plan of Organization).

102. Defendants are now threatening to deny Mrs. Dunbar her seat on the Cabarrus County Republican Party Executive Committee without providing her due process of law.

Case 1:22-cv-00597-LCB-JLW   Document 1   Filed 07/29/22   Page 27 of 35

103.  Defendants' actions are arbitrary and without any legal justification and are not grounded in any objective criteria that had previously been articulated or announced by Defendants.

104.  Mrs. Dunbar has in fact not violated any of the provisions of the Plan of Organization or any other such standard of conduct.

105.  The formal "notice" provided to Mrs. Dunbar is so meager in its actual allegations as to provide no fair notice of what conduct is to form the basis for the proceedings to be had on August 2, 2022.

106.  Furthermore, the allegations of the "notice" that can be discerned plainly do not violate any of the provisions of the County Party's Plan of Organization or any other such standard of conduct.

107.  Defendants seek to judge Mrs. Dunbar using an amorphous standard ("gross inefficiency") that is so vague and ambiguous as to provide no notice of what it proscribes, in violation of due process of law.

108.  Regardless of what the term "gross inefficiency" ought to mean, it cannot mean: (1) scheduling a candidate forum and inviting all Republican candidates using the resources of the organization Mrs. Dunbar leads; (2) making a public comment that the notice cannot even bring itself to identify; and (3) a willingness to express differences of opinion among fellow members of the Executive Committee.  Yet, that is what the "charges" against Mrs. Dunbar amount to.

28

109. Under no reasonable interpretation of the phrase "gross inefficiency" could Mrs. Dunbar be legitimately removed from her position on the Executive Committee.

110. Letting their masks slip to show their true intentions, Defendants go so far as to assert in the notice that Mrs. Dunbar has in fact committed the acts alleged and that she should be removed—all *before* she has been afforded an opportunity to be heard on August 2.

111. Defendants are acting arbitrarily and attempting to deprive Mrs. Dunbar of her position, a position to which she is entitled by virtue of her office as President of the Cabarrus Republican Women, by defining the charge ("gross inefficiency") as whatever the Executive Committee wants it to mean, in violation of due process of law.

112. As a direct and proximate result of Defendants' violations of Mrs. Dunbar's rights, Mrs. Dunbar has sustained, and will likely sustain in the future, injuries cognizable at law and in equity, and she is therefore entitled to the relief set out in the prayer for relief below.

## COUNT III:
**Breach of Contract / Breach of Covenant
of Good Faith and Fair Dealing
(North Carolina Common Law)**

113. The allegations of the preceding paragraphs are realleged and incorporated herein by reference.

114. The course of dealing and the County Party Plan of Organization create a contract between the Cabarrus County Republican Party and the Cabarrus Republican Women and/or Mrs. Dunbar specifically.

115. To the extent that said contract exists only between the Cabarrus County Republican Party and the Cabarrus Republican Women, Mrs. Dunbar is an intended third-party beneficiary of the contract, as it was entered into for her direct, not incident, benefit.

116. The Cabarrus County Republican Party has materially breached, and threatens to continue materially breaching, that agreement, thereby causing damages to Mrs. Dunbar.

117. In every contract there is an implied covenant of good faith and fair dealing that neither party will do anything that injures the right of the other to receive the benefits of the agreement.

118. A special relationship exists between these contracting parties so as to give rise to a covenant of good faith and dealing, which Defendants have breached and threaten to continue breaching.

119. In particular, Defendants have made baseless allegations and are abusing the party disciplinary procedure in an effort to remove Mrs. Dunbar from a position she is rightfully entitled to hold.

120. As a direct and proximate result of Defendants' violations of Mrs. Dunbar's rights, Mrs. Dunbar has sustained, and will likely sustain in the

30

future, injuries cognizable at law and in equity, and she is therefore entitled to the relief set out in the prayer for relief below.

**COUNT IV:**
**Equitable Relief under the**
**County Party Plan of Organization**
**(North Carolina Common Law)**

121.  The allegations of the preceding paragraphs are realleged and incorporated herein by reference.

122.  The Cabarrus County Republican Party's Plan of Organization vests the President of the Cabarrus Republican Women with an automatic right to a seat on the County Party's Executive Committee.

123.  A particular person, once seated, may only lose that seat upon the occurrence of certain events, none of which has occurred here.

124.  Defendants are nonetheless threatening to unlawfully unseat Mrs. Dunbar from the Executive Committee and have manifested a clear and unmistakable intent to unseat her.

125.  Absent judicial relief, it is likely Defendants will unseat Mrs. Dunbar thereby depriving her of her position on the Executive Committee.

126.  Additionally, Mrs. Dunbar has standing to assert the rights of future designees of the Cabarrus Republican Women, and it is reasonably foreseeable that such future designees would fail to be seated or would not be seated promptly and on equal terms, if she is removed.

Case 1:22-cv-00597-LCB-JLW   Document 1   Filed 07/29/22   Page 31 of 35

127. Therefore, equitable relief preventing her removal is warranted.

128. As a direct and proximate result of Defendants' violations of Mrs. Dunbar's rights, Mrs. Dunbar has sustained, and will likely sustain in the future, injuries cognizable at law and in equity, and she is therefore entitled to the relief set out in the prayer for relief below.

## COUNT V:
## Defamation
## (North Carolina Common Law)

129. The allegations of the preceding paragraphs are realleged and incorporated herein by reference.

130. The notice signed by Defendants and emailed on July 18, 2022, to Mrs. Dunbar and the entire membership of the Executive Committee publicly defames Mrs. Dunbar.

131. By the email sent on or about July 18, 2022, and in numerous subsequent repetitions since then, Defendants' defamatory statements about Mrs. Dunbar have been published to third persons.

132. The notice makes several false and defamatory allegations about Mrs. Dunbar, including the following:

a. It states she "took it upon [her]self to use [her] official capacity as a member of this [Executive] committee to make a public comment on [an] incident in a light that was negative of the Executive Committee;"

32

    b. It accuses her of "habitual neglect of [her] power and duties as a member of the Executive Committee;"

    c. It states that she has "actively worked contrary to the efforts of the Executive Committee and its policies;" and

    d. It states that she has "openly stated [her] desire to work against the [Executive] Committee."

133. The statements listed in the preceding paragraph are false.

134. Defendants knew these statements were false when they made them, or Defendants made them with reckless disregard for the truth.

135. Additionally, the allegation that Mrs. Dunbar has been guilty of "gross inefficiency" is false and defamatory, and Defendants have likewise made this accusation knowing it to be untrue or with reckless disregard for the truth.

136. Defendants made no good faith investigation into the truth or falsity of these allegations before they asserted them or, if they did, they necessarily ignored the results of any such investigation.

137. Defendants made these statements with the intent of injuring Mrs. Dunbar's reputation and causing her to lose her position.

138. As a direct and proximate result of Defendants' violations of Mrs. Dunbar's rights, Mrs. Dunbar has sustained, and will likely sustain in the

33

future, injuries cognizable at law and in equity, and she is therefore entitled to the relief set out in the prayer for relief below.

## COUNT VI:
### Declaratory Judgment Relief
### (28 U.S.C. §§ 2201-02; N.C. Gen. Stat. § 1-253 *et seq.*)

139.   The allegations of the preceding paragraphs are realleged and incorporated herein by reference.

140.   An actual controversy exists between the parties.

141.   A declaratory judgment is necessary and appropriate as it would serve a useful purpose in clarifying and settling particular legal issues between the parties and thereby afford relief from much of the uncertainty and controversy giving rise to this proceeding.

142.   Accordingly, under 28 U.S.C. §§ 2201-02 and N.C. Gen. Stat. § 1-253 *et seq.*, Rule 57 of the Federal Rules of Civil Procedure, and Rule 57 of the North Carolina Rules of Civil Procedure, Mrs. Dunbar prays for declaratory and related relief declaring and defining the rights among the parties.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Jennifer Dunbar respectfully prays that this Court grant her the following relief:

1. Grant preliminary and permanent injunctive relief, including a temporary restraining order, if necessary;

2. Grant an appropriate declaratory judgment;

3. Grant her a jury trial on all claims so triable;

4. Award her nominal and appropriate compensatory damages for the violation of her rights;

5. Award her prejudgment and post-judgment interest;

6. Award her attorneys' fees and costs pursuant 42 U.S.C. § 1988, N.C. Gen. Stat. §§ 6-21.5 and 6-21.7, and as may be otherwise allowed by applicable law;

7. Tax costs of this action against Defendants; and

8. Grant her such other and further relief as this Court may deem just and proper.

Respectfully submitted, this the 29th day of July, 2022.

/s/B. Tyler Brooks
B. Tyler Brooks (N.C. Bar No. 37604)
Attorney for Plaintiff Jennifer Dunbar
LAW OFFICE OF B. TYLER BROOKS, PLLC
P.O. Box 10767
Greensboro, North Carolina 27404
Telephone: (336) 707-8855
Fax: (336) 900-6535
Email: btb@btylerbrookslawyer.com