IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
Case No. 1:22-cv-597

JENNIFER DUNBAR, President of the Cabarrus Republican Women,

Plaintiff,

vs.

ADDUL RAHMAN EL ALI, individually and in his official capacity as Chairman of the Cabarrus County Republican Party, *et al*.

Defendants.

**DEFENDANTS' BRIEF IN RESPONSE TO PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER**

NOW COME Defendants Cabarrus County Republican Party, Addul Rahman El Ali, Jack Lambert, Clay Mcguire, Benita Conrad, Scott Elliott, Parish Moffitt, Kevin Crutchfield, Darrin Gamradt, Anita Brown, and Jacob Abel, by and through the undersigned counsel, and hereby submit this brief in opposition to Plaintiff's request for a temporary restraining order. [D.E. 2].

## INTRODUCTION

Plaintiff seeks a temporary restraining order to enjoin Defendant Cabarrus County Republican Party ("Cabarrus GOP") and 14 members of its Executive Committee from proceeding pursuant to the Cabarrus GOP's governing bylaws. The 14 individual defendants have initiated proceedings to remove Plaintiff from the Executive Committee in the manner provided by Article IX(6)(a) of the North Carolina Republican Party Plan of Organization (which governs the Cabarrus GOP).

The Cabarrus GOP will consider Plaintiff's removal from the Executive Committee at a meeting on August 2, 2022, and the 14 individual defendants have duly provided Plaintiff with notice of the meeting and Plaintiff's ability to appear and provide a defense.

Plaintiff now seeks to stop this process – not through the dispute procedure outlined in the North Carolina Republican Party Plan of Organization, but through a temporary restraining order issued by this Court. But Plaintiff's 42 U.S.C. § 1983 claims, which form the basis for her prayer for a temporary restraining order, fail as a matter of law. And her due process claims are contradicted by the notice she received, which is the fulcrum of her lawsuit, as the notice serves *to provide Plaintiff with due process* in the manner required by the North Carolina Republican Party Plan of Organization. Further, Plaintiff cannot show any irreparable harm if a temporary restraining order is not issued.

Plaintiff's motion for a temporary restraining order should be denied.

**BACKGROUND**

The Cabarrus GOP is governed by the "Republican Party Plan of Organization, Cabarrus County, North Carolina" (the "County Plan"). (D.E. 7, ¶ 4). The Cabarrus GOP derives its powers from the North Carolina Republican Party and is subject to the "North Carolina Republican Party Plan of Organization" (the "State Plan"). (*Id.*, ¶ 5).

The Executive Committee of the Cabarrus GOP consists of 4 officers elected at odd-year County Conventions; 14 at-large members also elected at the same County

Conventions; the County Finance Chairperson; the immediate past County Chairperson; and the President or Chairperson of a Federated Cabarrus County Chapter of the following organizations: the Young Republicans, the Republican Women's, the Republican Men's, and the Teenage Republicans. (*Id.*, ¶ 6). Plaintiff is a current member of the Cabarrus GOP Executive Committee by virtue of serving as President of the Cabarrus Republican Women, a federated chapter of the Republican Women's Club. (*Id.*, ¶ 7).

Article IX(6)(a) of the State Plan provides that a member of a County Executive Committee may be removed for (i) gross inefficiency, (ii) party disloyalty, or (iii) failure to comply with the Plans of Organization, by a two-thirds vote of the Committee upon being furnished a written notice of such charges by one-third of the members of the Executive Committee. (*Id.*, ¶ 8).

On July 18, 2022, 14 members of the Cabarrus GOP Executive Committee signed a letter notifying Plaintiff that they will consider her removal from the Executive Committee at the August 2, 2022 Executive Committee meeting (the "Notice"), and notifying Plaintiff of her ability to appear at the meeting and present a defense. (*Id.*, ¶ 9). The grounds for removal are stated in the Notice. (*Id.*) Defendants conferred with the North Carolina Republican Party prior to sending the Notice to Plaintiff. (*Id.*, ¶ 10).

Plaintiff commenced this action on July 29, 2022, alleging, among other things, that the Cabarrus GOP has engaged in systemic gender discrimination. [D.E. 1, ¶¶ 63-75]. Plaintiff contends that "men are treated far more favorably by the Cabarrus

GOP than women, especially when it comes to placing individuals in positions of power." [D.E. 1, ¶ 41]. Plaintiff requests a temporary restraining order enjoining Defendants from proceeding with the August 2, 2022 meeting.[1] [D.E. 2].

Contrary to Plaintiff's allegations of gender discrimination, the Cabarrus GOP Executive Committee has promoted women at every turn. In 2022, there have been two at-large vacancies on the Executive Committee, and the Executive Committee filled both vacancies with women. (D.E. 7, ¶ 14). In 2020, the Executive Committee nominated a woman to fill a vacant State House of Representatives seat. (*Id.*, ¶ 16). The current Chairperson of the Executive Committee was the keynote speaker at the North Carolina Federation of Republican Women's State Convention dinner. (*Id.*, ¶ 18). And one of the first things the current Executive Committee did after assuming their roles in 2021 was to launch a "The GOP Looks Like Me" campaign, which promotes the Cabarrus GOP as inclusive of all races and genders. (*Id.*, ¶ 13).

Article X(C)(1) of the State Plan and Article VIII(C)(1) of the County Plan dictates that any disputes within the Cabarrus GOP shall be decided by an Arbitration Committee consisting of the State Chairman, State Vice-Chairman, National Committeeman, National Committeewoman and General Counsel for arbitration. (*Id.*, ¶ 22).

## <u>QUESTION PRESENTED</u>

[1] Plaintiff e-mailed a "Notice as to Application for Temporary Restraining Order" to Defendants the evening of August 1, 2022 indicating that she intended to apply for a temporary restraining order from this Court at 9:00 AM on August 2, 2022.

Whether Plaintiff has established that she is entitled to a temporary restraining order.

## LEGAL STANDARD

The substantive standards for granting a request for a temporary restraining order and entering a preliminary injunction are the same. *See Virginia v. Kelly*, 29 F.3d 145, 147 (4th Cir. 1994) (applying preliminary injunction standard to a request for temporary restraining order). "A preliminary injunction is 'an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief' and may never be awarded 'as of right.'" *Mt. Valley Pipeline, LLC v. W. Pocahontas Props. Ltd. P'ship*, 918 F.3d 353, 366 (4th Cir. 2019) (citing *Winter v. NRDC, Inc.*, 555 U.S. 7, 22, 24 (2008)). "A plaintiff seeking a preliminary injunction must establish that [s]he is likely to succeed on the merits, that [s]he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in h[er] favor, and that an injunction is in the public interest." *Winter*, 555 U.S. at 20.

Plaintiff has the burden to prove each factor. *Id.* Additionally, a plaintiff must show that success on the merits is likely regardless of whether the balance of hardships weighs in her favor. *The Real Truth About Obama, Inc. v. F.E.C.*, 575 F.3d 342, 346 (4th Cir. 2009), *vacated on other grounds*, 559 U.S. 1089 (2010). This burden requires more than simply showing that "grave or serious questions are presented." *Id.* at 346-47.

## ARGUMENT

### I. PLAINTIFF IS UNLIKELY TO SUCCEED ON HER CLAIMS.

To implicate 42 U.S.C. § 1983, conduct must be "fairly attributable to the State." *Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 937, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982). "The person charged must be a state actor or have a sufficiently close relationship with state actors such that a court would conclude that the non-state actors is engaged in the state's actions." *DeBauche v. Trani*, 191 F.3d 499, 506 (4th Cir. 1999). "[P]rivate activity will generally not be deemed 'state action' unless the state has so dominated such activity as to state action[.]" *Id.* at 507.

The Cabarrus GOP, and the members of its Executive Committee, are not state actors. Courts have routinely rejected 42 U.S.C. § 1983 claims against political parties and its members in matters relating to filling party offices. *See, e.g., Lynch v. Torquato,* 343 F.2d 370, 372 (3d Cir.1965) ("the normal role of party leaders in conducting internal affairs of their party, other than primary or general elections, does not make their party offices governmental offices or the filling of these offices state action"); *California Republican Party v. Mercier*, 652 F.Supp. 928, 934 (C.D. Cal. 1986) ("Though heavily regulated, the California Republican party is not part of the state government, and its actions are not state actions"); *McMenamin v. Philadelphia County Democratic Executive Committee,* 405 F.Supp. 998, 1003 (E.D.Pa.1975) ("the filling of [a party office] is not state action or action under color of state law"); *Kay v. New Hampshire Democratic Party,* 821 F.2d 31, 33 (1st Cir.1987) (political candidate has no right of access to political party's presidential candidate forum since "in holding the forum, the Party was not engaged in governmental activity"); *Banchy v. Republican Party of Hamilton County*, 898 F.2d 1192, 1196 ("the Republican Party is

not subject to under section 1983 for irregularities in its internal ward chairman elections.").

Even if Defendants were state actors, the complaint fails to state a claim for violation of Plaintiff's due process rights. While Plaintiff alleges that she has been denied due process by virtue of the Notice, the irony is that the Notice *provides due process* to Plaintiff in the exact manner required by the North Carolina Republican Party Plan of Organization. Plaintiff has the right under the Plan of Organization to appear at the meeting and defend herself against the proposed removal.

Finally, even if Plaintiff has stated a claim, there is no likelihood that Plaintiff will prevail on this claim. Plaintiff alleges that there is "a two-tiered system wherein men are treated far more favorably by the Cabarrus GOP than women, especially when it comes to placing individuals in positions of power." [D.E. 1, ¶ 41]. Yet just this year, when there have been two vacancies on the Executive Committee caused by the resignation of males from at-large positions, *those vacancies in have been filled by females*. (D. E. 7, ¶ 14). And in 2020, when the Executive Committee was tasked with appointing a qualified person to fill the remainder of the term for the late State Rep. Linda Johnson, the Committee *appointed a female*. (*Id.*, ¶ 16).

One of Plaintiff's chief complaints appears to be that in 2019, there was a delay in seating the Woman's Club President (who was not Plaintiff) on the Executive Committee [D.E. 1, ¶ 50] – but this was because the Women's Club had not provided documentation of its federated status to the Cabarrus GOP. (D.E. 7, ¶ 19). Indeed, there was no "delay" in seating Plaintiff as a member of the Executive Committee

when she began serving as Women's Club President in 2021. (*Id.*). The complaint also alleges that the Cabarrus GOP called the police "for no reason" after a woman attempted to speak at a June 2022 meeting, but the reason the police were called was because there was a disruptive and unruly crowd that refused to leave the room after the Executive Committee voted to go into closed session.[2] (D.E. 6, ¶ 4). A former President of the Women's Club emphatically denies that she has ever observed any gender discrimination in the Cabarrus GOP. (D.E. 5, ¶ 5).

The remainder of Plaintiff's claims (breach of contract, equitable relief under the County Plan, defamation, and declaratory judgment) also fail and in any event cannot support the issuance of a temporary restraining order. No contract exists between Plaintiff and any of the Defendants. Defendants have followed the exact procedure as set forth in the County Plan. The complaint fails to state what false statement of fact Defendants have alleged to have made to support her defamation claim, and this claim is in any event unrelated to the basis for her motion for a temporary restraining order.

## II. PLAINTIFF CANNOT SHOW IRREPARABLE INJURY.

Plaintiff's allegation of irreparable harm is based on speculation that, if Plaintiff is in fact removed from her seat on the Cabarrus GOP Executive Committee, the Executive Committee will not seat another woman to fill Plaintiff's seat. Yet Defendants have repeatedly filled vacancies in the past with women – including the

[2] This meeting was for the Cabarrus GOP to make endorsements for the Cabarrus County School Board election, and the Executive Committee voted to endorse two woman and one man for the three endorsement positions. (D.E. 6, ¶ 3).

nomination of a State Representative. (D.E. 7, ¶¶ 14-16). Moreover, if Plaintiff contests the process by which she is removed from the Executive Committee (if she is in fact removed), she has the ability to follow the dispute process outlined at Article X(C)(1) of the State Plan and Article VIII(C)(1) of the County Plan.

**CONCLUSION**

For the foregoing reasons, Plaintiff's motion for a temporary restraining order should be denied.

This the 2nd day of August, 2022.

/s/ *James R. DeMay*
James R. DeMay
N.C. Bar No. 36710
MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC
900 W. Morgan St.
Raleigh, NC 27603
Tel: (704) 941-4648
jdemay@milberg.com