IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
Case No. 1:22-cv-00597-LCB-JLW

| | |
|---|---|
| JENNIFER DUNBAR, President of the Cabarrus Republican Women, | |
| Plaintiff, | PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS |
| v. | |
| ADDUL RAHMAN EL ALI, individually and in his official capacity as Chairman of the Cabarrus County Republican Party; JACK LAMBERT, individually and in his official capacity as Vice Chairman of the Cabarrus County Republican Party; CLAY MAGUIRE, individually and in his official capacity as Secretary of the Cabarrus County Republican Party; and the CABARRUS COUNTY REPUBLICAN PARTY, | |
| Defendants. | |

## NATURE OF THE MATTER

This is an action by Jennifer Dunbar to vindicate her rights as a member of the Cabarrus County Republican Party's Executive Committee. In August, she was wrongfully removed as a member of that body. Her removal was not any mere wrongful action, however. It was yet another instance of sex discrimination by the Cabarrus County Republican Party. Contrary to the insistence of the Party, it is bound to abide by the Equal Protection Clause due to the powers given to it by state law. Thus, Mrs. Dunbar sues to vindicate her

constitutional rights as well as the contractual-based rights she holds under the Cabarrus County Republican Party's *Plan of Organization*.

## QUESTION PRESENTED

Whether Defendants' motion to dismiss is moot due to the filing of an Amended Complaint?

## ARGUMENT

### I. DEFENDANTS' MOTION IS MOOT DUE TO THE FILING OF AN AMENDED COMPLAINT.

Defendants' pending motion to dismiss is now moot because Mrs. Dunbar has timely filed an amended complaint as of right under Fed. R. Civ. P. 15(a), and Mrs. Dunbar respectfully urges the Court to deny the motion as moot. "The general rule . . . is that an amended pleading supersedes the original pleading, rendering the original pleading of no effect." *Young v. City of Mt. Rainier*, 238 F.3d 567, 573 (4th Cir. 2001); *see, e.g., Blount v. Carlson Hotels*, No. 3:11-cv-452-MOC-DSC, 2011 U.S. Dist. LEXIS 140278, at *3-4 (W.D.N.C. Dec. 6, 2011); *Campbell v. Enter. Holdings, Inc.*, No. 5:11-cv-424-FL, 2011 U.S. Dist. LEXIS 148302, at *1 n.1 (E.D.N.C. Dec. 27, 2011); *see also Lujan v. Chowan Univ.*, No. 2:17-CV-57-FL, 2018 U.S. Dist. LEXIS 133428, at *9 (E.D.N.C. Aug. 8, 2018) ("Where an amended complaint is forthcoming, motions to dismiss earlier complaints are denied as moot.").

Therefore, Defendants' motion should be denied (or dismissed) as moot.

## II. TO THE EXTENT THE MERITS OF DEFENDANTS' MOTION ARE REACHED, IT SHOULD BE DENIED.

### A. EQUAL PROTECTION CLAIM.

First, Mrs. Dunbar states a valid Equal Protection Clause claim. In the Twentieth Century, federal courts began closely examining how the organization and functioning of political parties perpetuated racial discrimination. Thus, federal courts struck down primary election schemes by parties that discriminated on the basis of race. *Terry v. Adams*, 345 U.S. 461, 62-63 (1953) (plurality opinion); *Smith v. Allwright*, 321 U.S. 649, 656-57 (1944); *Nixon v. Condon*, 286 U.S. 73, 88-89 (1932). These cases reasoned that the state unconstitutionally endorses and adopts discrimination when it accepts onto its ballots the results of racially discriminatory primaries. *See Smith*, 321 U.S. at 664.

Beyond these so-called "white primary cases," the U.S. Supreme Court has also found that a political party's county-based scheme for selecting nominees violated the principle of one person, one vote. *Gray v. Sanders*, 372 U.S. 368, 374-75 (1963). And, it has found unconstitutional a requirement that voters pay a registration fee to participate in a primary election. *Morse v. Republican Party of Va.*, 517 U.S. 186, 197-99 (1996); *see Bullock v. Carter*, 405 U.S. 134, 148-49 (1972) (striking down Texas law requiring that candidates in primary elections pay a filing fee to be placed on ballot).

Though courts are not inclined to meddle with the internal affairs of a political party generally, when state law grants political parties special rights and privileges related to the nomination of candidates and ballot access, the parties' procedures under those laws constitute state action, subject to constitutional limitations and protections. *See Gray*, 372 U.S. at 374 ("[T]he action of this [political] party in the conduct of its primary constitutes state action within the meaning of the Fourteenth Amendment."); *Rockefeller v. Powers*, 74 F.3d 1367 (2d Cir. 1995) (reviewing constitutionality of state enacted scheme for delegates to Republican Party Convention).

North Carolina law regarding the power of County Party Executive Committees is just such an example of special rights and privileges that, once conferred by state law, come with a requirement that they be discharged in a manner consistent with the United States Constitution. Under North Carolina election law, County Party Executive Committees elect the individuals to fill vacancies in such offices as State Senate and State Representative, *see* N.C. Gen. Stat. § 163-11, and in filling certain vacancies on the ballot occurring after a nomination but before the election, *see* N.C. Gen. Stat. § 163-114. The powers given by state law to these County Party Executive Committees is therefore enormous and, in some cases, their actions constitute the direct selection of an official for the balance of the prior officeholder's term. *See Smith*, 321 U.S. at 663 ("The party takes its character as a state agency from the duties imposed

upon it by state statutes; the duties do not become matters of private law because they are performed by a political party."). These laws in fact grant more direct power, and thus implicate greater state action, than simply conducting a primary, since in some cases the Executive Committee is literally naming the new officeholder.

By excluding Mrs. Dunbar from a process of this nature for discriminatory reasons because of her sex, Defendants are effecting a gender gerrymander of the Executive Committee for those times it may be called upon to exercise these statutory duties. Defendants, though, would have this Court rule that, notwithstanding this important statutory power, political parties could exclude members from their Executive Committees based on factors such as race or sex. Fortunately, the Supreme Court has made clear that the Constitutions forbids such a result.

This suit then is not asking the Court to intervene in an intraparty dispute, but rather to preserve the constitutional integrity of a process state statutory law has already put in place for the election of the people's representatives and other government officials.

Mrs. Dunbar is being targeted for removal from her position because she is a woman. Defendants' actions therefore violate the Equal Protection Clause, which is enforceable pursuant to 42 U.S.C. § 1983 and which protects individuals against intentional, arbitrary discrimination. U.S. Const., amend.

XIV, § 1 (providing that no state shall "deny to any person within its jurisdiction the equal protection of the laws").

To show a claim of sex discrimination under the Equal Protection Clause, a plaintiff must show she was "treated differently from others with whom [she] is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination" as well as that "the disparity was not justified under the appropriate level of scrutiny." *Fauconier v. Clarke*, 966 F.3d 265, 277 (4th Cir. 2020). Title VII's analytical framework can be instructive for claims of sex discrimination under the Equal Protection Clause. *See, e.g., Wilcox v. Lyons*, 970 F.3d 452, 462 (4th Cir. 2020) ("Title VII's antidiscrimination provision overlaps the ambit of the Equal Protection Clause, and we have applied a similar framework in analyzing workplace protected-characteristic discrimination claims under each[.]").

Here, Mrs. Dunbar is qualified for her position on the Executive Committee. The County Party's Plan of Organization makes her a member of the Executive Committee by virtue of her office as President of the CRW. Moreover, the evidence shows she is a talented and hard-working party volunteer.

The fact that Defendants formally charged her with the purported offense of "gross inefficiency" constitutes an admission by them that they can only remove her "for cause." But, when Defendants' allegations are examined, they

crumble. In the first two charges, they take issue with the CRW holding a Republican candidates forum—this, of course, is what political organizations do. That is effectiveness, not inefficiency. As to the question of not excluding the non-party endorsed candidates from the CRW event, the Republican Men's Club has held at least one event where non-endorsed candidates presented, and no discipline has come to him.

The other charges all relate to the ability of Mrs. Dunbar to express an opinion different from that of the Party Chairman. For a party chairman who has previously defended those who backed the election of an Unaffiliated man over a Republican woman, these charges sound less like wanting party loyalty and more like an antiquated belief that women should simply do as they are "told." Ms. Matthews' declaration goes so far as to describe how Chairman Ali used that description of her, which she understood to be a sex-based stereotype due to her being a woman in a position of authority, who was taking a position opposed to him.

Such behavior is consistent with Chairman Ali's dismissive attitude toward CRW events, where he refuses to pay and even allows others to enter without paying, causing the women volunteering to feel demeaned and insulted. "Intentional discrimination on the basis of gender by state actors violates the Equal Protection Clause, particularly where, as here, the discrimination serves to ratify and perpetuate invidious, archaic, and overbroad

stereotypes about the relative abilities of men and women." *J.E.B. v. Ala. ex rel. T.B.*, 511 U.S. 127, 130-31 (1994).

That Chairman Ali could secure the backing of other Executive Committee members for his effort to oust Mrs. Dunbar is not surprising when the history of the County Party is considered. Women, and the CRW, have had difficulty with the County Party for years. The County Party has tried to stop its events, subjected them to criticism, and even delayed seating the President of the CRW for *four months*, even though it immediately seated an 18-year-old men's club chairman at the same time. Indeed, younger, less qualified men have been placed in positions of authority, while more experienced women have been passed over by the County Party.

The weakness in the charges against Mrs. Dunbar shows that they are mere pretext for seeking to remove her from her seat and the reason is she is a strong woman. And, removing her from her seat because she is a strong woman cannot satisfy intermediate scrutiny.

### B. CONTRACT-BASED CLAIMS.

Additionally, Mrs. Dunbar's claims based on a theory of contract are well-grounded in North Carolina law. State law has long recognized the contractual nature of membership in an organization, and when it is unduly denied, the member has a legal claim sounding in contract. *See, e.g., Bright Belt Warehouse Ass'n v. Tobacco Planters Warehouse, Inc.*, 231 N.C. 142, 56 S.E.2d

391 (1949); *Cape Hatteras Elec. Membership Corp. v. Stevenson*, 2015 NCBC 34, 2015 NCBC LEXIS 37 (N.C. Sup. Ct. Apr. 9, 2015).

The County Party's plan of organization supplies the contractual basis for Mrs. Dunbar's claims in Count III of the Amended Complaint, and thus the motion to dismiss should be denied.

**C. DEFAMATION AND REMAINING CLAIMS.**

The heart of Defendants' argument against Mrs. Dunbar's defamation claim is that Defendants were privileges to make the assertions, but they cite no law making such statements privilege. The notice and subsequent party meeting in which the defamatory statements were made are not legal proceedings, for instance, where a litigation privilege might be claims.

Furthermore, the claims are not mere opinion, but actionable defamation. These statements were in fact intended by Defendants to supply the factual basis for their removal actions and did in fact result in Mrs. Dunbar's removal. Defendants cannot now say the very notice provided was unreliable hyperbole. *Cf. Craven v. SEIU COPE*, 188 N.C. App. 814, 818, 656 S.E.2d 729 (2008).

Mrs. Dunbar's declaratory judgment claims should also remain as they ask the Court to clarify issues that will assist the parties in resolving these matters.

## CONCLUSION

WHEREFORE, Mrs. Dunbar respectfully asks that the motion to dismiss be denied.

Respectfully submitted, this the 13th day of January, 2023.

>  /s/B. Tyler Brooks
> B. Tyler Brooks (N.C. Bar No. 37604)
> Attorney for Plaintiff Jennifer Dunbar
> LAW OFFICE OF B. TYLER BROOKS, PLLC
> P.O. Box 10767
> Greensboro, North Carolina 27404
> Telephone: (336) 707-8855
> Fax: (336) 900-6535
> Email: btb@btylerbrookslawyer.com

## CERTIFICATE OF WORD COUNT

The undersigned counsel certifies that the foregoing brief complies with Local Civil Rule 7.3(d) in that, according to the word count feature of his word processing software, it contains less than 6,250 words, excluding those parts that are allowed to be excluded by the Rule.

/s/B. Tyler Brooks
B. Tyler Brooks

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing document was filed on January 10, 2023, via the Court's CM/ECF system, which will effect service on counsel for the defendants, in accordance with the Federal Rules of Civil Procedure.

/s/B. Tyler Brooks
B. Tyler Brooks

**SERVED:**
James R. DeMay, Esq.
MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC
900 W. Morgan Street
Raleigh, NC 27603
jdemay@milberg.com