IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
Case No. 1:22-cv-597

| | |
|---|---|
| JENNIFER DUNBAR, President of the Cabarrus Republican Women,<br><br>                Plaintiff,<br><br>vs.<br><br>ADDUL RAHMAN EL ALI, individually and in his official capacity as Chairman of the Cabarrus County Republican Party, JACK LAMBERT, individually and in his official capacity as Vice Chairman of the Cabarrus County Republican Party; CLAY MAGUIRE, individually and in his official capacity as Secretary of the Cabarrus County Republican Party; and the CABARRUS COUNTY REPUBLICAN PARTY,<br><br>                Defendants. | **MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT** |

NOW COME Defendants Addul Rahman El Ali, Jack Lambert, Clay Maguire, and the Cabarrus County Republican Party (collectively, "Defendants"), by and through counsel, and submit this memorandum in support of their motion to dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

## INTRODUCTION

This case presents a dispute in the internal affairs of the Cabarrus County Republican Party (the "Cabarrus GOP"). The three individual Defendants, together with 11 other members of the Cabarrus GOP Executive Committee, initiated proceedings to remove Plaintiff Jennifer Dunbar ("Plaintiff") from the Executive

1

Committee on four counts of "gross inefficiency" in the manner provided by the "Republican Party Plan of Organization, Cabarrus County, North Carolina" (the "County Plan"), which governs the operations of the Cabarrus GOP. (DE 17 ¶ 13).

The proceedings initiated by the individual Defendants and the 11 other members of the Executive Committee afforded Plaintiff the opportunity to appear at an Executive Committee meeting on August 2, 2022 to defend herself against the charges of gross efficiency. (DE 17 ¶ 58). Plaintiff appeared at the meeting, and after due deliberation, the Executive Committee voted to remove Plaintiff on two of the four counts of gross inefficiency. (DE 17 ¶¶ 68-69).

Plaintiff has now appealed the Executive Committee's decision to the North Carolina State Republican Party, as she is authorized to do pursuant to the County Plan. (DE 17 ¶ 70). The State Party has not yet considered Plaintiff's appeal. (*Id.*)

On these facts, Plaintiff has filed this lawsuit against the Cabarrus GOP and three individual Defendants, alleging claims for sex discrimination in violation of the equal protection clause, obstruction of justice and witness intimidation, breach of contract, and defamation.

The Complaint fails to state any claim upon which relief may be granted. The Section 1983 claim fails because Defendants are not state actors and because Plaintiff cannot plausibly allege that she was discriminated against based her based on sex. The Section 1985(2) claim lacks merit because Plaintiff has not alleged, nor could she allege, any facts that Defendants have engaged in some conspiracy to obstruct justice or to intimidate witnesses. The breach of contract claim cannot be sustained because

there is no contract between the parties, and even if there were, Plaintiff cannot allege that any contract was breached. Finally, the defamation claim must be dismissed because, among other reasons, Plaintiff has not alleged that Defendants have made false statements of fact that could cause injury to Plaintiff's reputation.

For the reasons stated herein, Plaintiff's Motion to Dismiss should be granted, and the Amended Complaint should be dismissed with prejudice.

## STATEMENT OF THE CASE

Plaintiff commenced this action on July 29, 2022. (DE 1). Plaintiff named as defendants the Cabarrus County Republican Party and all 14 members of the Executive Committee that signed a letter dated July 18, 2022 charging Plaintiff with counts of gross inefficiency. (*Id*.). Plaintiff filed a Motion for Temporary Restraining Order and Preliminary Injunction on August 2, 2022. (DE 2). The Motion for Temporary Restraining Order and Preliminary Injunction was denied by Order entered on August 2, 2022. (DE 9).

Summons were issued for defendants on August 26, 2022 and August 31, 2022 (DE 11, 13). A waiver of service of summons for all Defendants was filed on October 26, 2022. (DE 14).

Defendants filed a motion to dismiss and memorandum in support on December 23, 2022. (DE 15, 15). Plaintiff filed an Amended Complaint on January 13, 2023. (DE 17). The Amended Complaint names only Defendants Ali, Lambert, and Maguire, as well as the Cabarrus GOP, as Defendants. (DE 17).

Defendants now move to dismiss all claims in the Amended Complaint.

## STATEMENT OF THE FACTS

The allegations of the Amended Complaint, taken as true, reflect the following:

The Cabarrus GOP comprises as members all registered Republicans in Cabarrus County, North Carolina. (DE 17 ¶ 13). It is governed by the "Republican Party Plan of Organization, Cabarrus County, North Carolina" (the "County Plan") and the "North Carolina Republican Party Plan of Organization" (the "State Plan").[1] (DE 1 ¶ 24; DE 17 ¶ 13).

The Cabarrus GOP is operated by its Executive Committee. The Executive Committee consists of 4 officers elected at odd-year County Conventions, 14 at-large members also elected at the same County Conventions, the County Finance Chairperson, the immediate past County Chairperson, and the President or Chairperson of a Federated Cabarrus County Chapter of the following organizations: the Young Republicans, the Republican Women, the Republican Men, and the Teenage Republicans. (DE 7, Ex. 1, pp 5-6). Plaintiff was elected President of the Cabarrus Republican Women in November 2021, and, as a result, was seated on the Executive Committee. (DE 17 ¶¶ 9, 40). Defendant Ali is the Chairperson of the Executive Committee, Defendant Lambert is its Vice Chairperson, and Defendant Maguire is its Secretary. (DE 17 ¶¶ 10-12).

---

[1] On a motion to dismiss, the Court "may consider a document submitted by the movant that was not attached to or expressly incorporated in a complaint, so long as the document was integral to the complaint and there is no dispute about the document's authenticity." *Am. Chiropractic Ass'n. v. Trigon Healthcare, Inc.,* 367 F.3d 212, 234 (4th Cir. 2004). The County Plan and the State Plan are attached as Exhibits 1 and 2 at DE 7.

4

Article IX(6)(a) of the State Plan provides that a member of a County Executive Committee may be removed by a two-thirds vote of the Committee for either (i) gross inefficiency, (ii) party disloyalty, or (iii) failure to comply with the State or County Plan of Organization. (DE 7, Ex. 2). Written notice of such charges must be furnished to the member by at least one-third of the members of the Executive Committee. (DE 7, Ex. 2).

Pursuant to Article IX(6)(a) of the State Plan, on July 18, 2022, the 14 members of the Executive Committee – including the 3 individual Defendants – furnished a letter to Plaintiff, notifying her that they intend to consider her removal from the Executive Committee for gross inefficiency at the Committee's August 2, 2022 meeting. (DE 7, Ex. 3; DE 17 ¶ 56). The letter asserts four "counts" of gross inefficiency against Plaintiff. (DE 7, Ex. 3). The four counts relate to: (1) Plaintiff's efforts to organize a forum for non-endorsed school board candidates after the Executive Committee upon which Plaintiff sits had already made endorsements in the school board race; (2) Plaintiff's efforts to organize the school board forum after it had already been agreed by the Executive Committee and the affiliate Men's, Women's, and Young Republican Clubs that the Young Republican's Club and the Executive Committee would host the school board forum, the Men's and Women's Clubs would host the County Commission forum, and the Cabarrus GOP would host the State House forum; (3) Plaintiff's public comments made in her official capacity as an Executive Committee member in the wake of an incident at the June 2022 Committee meeting that were negative to the Committee; and (4) Plaintiff's

persistent statements that "she is not on the same team as the Executive Committee," demonstrating a disregard for the will of the Committee. (DE 7, Ex. 3; DE 17 ¶ 60).

The letter was e-mailed to Plaintiff by Defendant Clay Maguire in his capacity as Secretary of the Executive Committee. (DE 7, Ex. 3; DE 17 ¶ 56). The letter states that the Executive Committee had received guidance from legal counsel for the State Republican Party regarding the standard for removal for "gross inefficiency" prior to sending the letter.[2] (DE 7, Ex. 3).

Plaintiff alleges that at the August 2, 2022 meeting, Defendant Lambert presented the statements in the letter to the Executive Committee along with other unspecified "false statements." (DE 17 ¶ 67). After deliberation, the Executive Committee voted to remove Plaintiff under two of the four gross inefficiency counts. (DE 17 ¶ 69).

Article III(B)(5)(b) of the County Plan provides that if an Executive Committee member is removed, the member may appeal the decision to the State Republican Party Central Committee within 20 days of the County decision. (DE 7, Ex 1). Plaintiff alleges that she has timely appealed the Executive Committee's decision to the State Republican Party, but that "she has been informed by the NCGOP that it will not consider the appeal so long as this lawsuit is pending." (DE 17 ¶ 70).

Plaintiff initially commenced this action against the Cabarrus GOP and all 14 individual members of the Executive Committee that had signed the letter. (DE 1).

---

[2] The letter, which is cited by Plaintiff throughout the Complaint, is at DE 7, Exhibit 3.

6

Plaintiff's Amended Complaint now asserts these same allegations only against the Cabarrus GOP and Defendants Ali, Lambert, and Maguire. (DE 17).

Plaintiff generally alleges that there "has long been a problem with male members of the local GOP leadership making sexist comments, criticizing and denigrating women's political events, and trying to prevent women's events from even occurring." (DE 17 ¶ 29). Plaintiff alleges that the Cabarrus GOP's "problems with sex discrimination" "can be traced to before 2017." (DE 17 ¶ 28). Specifically, Plaintiff alleges the following in support of her claims:

- Plaintiff alleges that in 2019, a former Executive Committee delayed four months before seating the President of the Cabarrus Republican Women (not Plaintiff) on the Executive Committee. (DE 17 ¶ 38). Plaintiff further alleges that when she was elected President of the Cabarrus Republican Women in 2021, Defendant Ali "expressed great frustration to many people, shouting and using expletives like the 'f-word'", and that the Executive Committee met in "closed session for approximately fifteen minutes" before seating Plaintiff on the Committee. (DE 17 ¶ 40).

- Plaintiff alleges that in 2019, "men from the County Party" questioned why the Cabarrus Republican Women wanted to have a separate booth from the Cabarrus GOP at the Cabarrus County Fair. (DE 17 ¶ 41).

- Plaintiff alleges that in a 2019 City Council election, two women members of the Executive Committee committed "party disloyalty" by allegedly supporting a male independent candidate over a female Republican candidate (not Plaintiff). (DE 17 ¶ 43). Plaintiff complains that these two women were not disciplined for this "disloyalty" because they were "disloyal in the 'right way' – that is, by supporting a man over a woman." (DE 17 ¶ 43).

- Plaintiff alleges that in the 2020 General Election, the "male leadership of the County Republican Party" responded "with great hostility" to a female candidate (not Plaintiff) who printed her own sample voting ballots. (DE 17 ¶ 44). Plaintiff claims that in retaliation, a male member of the Cabarrus GOP "changed the locks on the local Republican Party headquarters," preventing the female candidate from obtaining

7

campaign materials. (DE 17 ¶ 45).

- Plaintiff alleges that in the 2022 Primary Election, Defendant Ali supported an incumbent male District Court Judge candidate over a female candidate (not Plaintiff). (DE 17 ¶ 46).

- Plaintiff alleges that at an Executive Committee meeting to consider candidate endorsements for County School Board in the 2022 General Election, Defendant Ali refused to let a woman in the audience (not Plaintiff) speak, and that the police were called. (DE 17 ¶ 47).

- Plaintiff alleges that Defendant Ali "took issue" with the Cabarrus Republican Women hosting a school board forum for non-endorsed school board candidates. (DE 17 ¶ 48).

- Plaintiff alleges that Defendant Ali has a "longtime practice of attending functions hosted by the Cabarrus Republican Women," but fails to pay for his attendance at these events. (DE 17 ¶ 49). For example, Plaintiff alleges that Defendant Ali failed to bring $10 and a baby gift to one event. (DE ¶ 50).

- Plaintiff alleges that Defendant Ali made threats to a woman (not Plaintiff) who was involved in a property dispute with the County as a member of a charter school board. (DE 17 ¶ 51).

- Plaintiff alleges that the Cabarrus GOP has placed "less qualified men in positions of authority in the party." (DE 17 ¶ 52). While Plaintiff acknowledges that women are also placed into party positions, these women "are not treated equally and must submit to the will of male leadership[.]" (DE 17 ¶ 53).

Plaintiff contends that the July 18, 2022 notice charging her with "gross efficiency" is discriminatory, contending that Defendants "are attempting to use their removal power to control the Cabarrus Republican Women." (DE 17 ¶ 61). Plaintiff alleges that "Defendants are trying to control [her] entire ability to think and speak independently of Chairman Ali and the Executive Committee." (DE 17 ¶ 62).

Under these alleged facts, Plaintiff has asserted against Defendants claims for violation of Section 1983 for sex discrimination in violation of the equal protection

8

clause, violation of Section 1985 claim for obstruction of justice and witness intimidation, breach of contract, and defamation.

## QUESTION PRESENTED

Whether the Amended Complaint should be dismissed for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).

## LEGAL STANDARD

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quotation marks omitted). A claim is facially plausible when the factual content allows the Court to reasonably infer that the defendant is liable for the misconduct alleged. *Id.*

## ARGUMENT

I.  **The Amended Complaint Fails to State a Claim under 42 U.S.C. § 1983 for Sex Discrimination in Violation of the Equal Protection Clause (First Claim for Relief).**

Plaintiff has first alleged a claim against Defendants under 42 U.S.C. § 1983 for sex discrimination. Section 1983 creates no substantive rights; it merely provides a remedy for violations of other federally-protected rights. *Chapman v. Houston Welfare Rights Organization*, 441 U.S. 600, 99 S.Ct. 1905, 60 L.Ed.2d 508 (1979); *Maine v. Thiboutot*, 448 U.S. 1, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980). The statute provides a civil cause of action for "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State… subjects, or causes to be

9

subjected, any citizen… to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983.

Here, Plaintiff alleges a Section 1983 claim for violation of the Equal Protection Clause of the Fourteenth Amendment. Plaintiff's Section 1983 claims must be dismissed as a matter of law for at least two reasons: (1) Defendants are not state actors and thus cannot be subject to a Section 1983 claim, and (2) Plaintiff has not alleged any facts that could plausibly support a Section 1983 claim.

### a. Plaintiff's Section 1983 Claim Fails because Defendants are Not State Actors.

To implicate 42 U.S.C. § 1983, the alleged conduct must be "fairly attributable to the State." *Lugar v. Edmonson Oil Co.*, 457 U.S. 922, 937, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982). "The person charged must be a state actor or have a sufficiently close relationship such that a court would conclude that the non-state actor is engaged in the state's actions." *DeBauche v. Trani*, 191 F.3d 499, 506 (4th Cir. 1999). "[P]rivate activity will generally not be deemed 'state action' unless the state has so dominated such activity as to state action[.]" *Id.* at 507.

Political parties, like the Cabarrus GOP, are private entities. *See Marts v. Republican Party of Virginia, Inc.*, 744 Fed.Appx. 806, 807 (4th Cir. 2018) (recognizing that the Virginia Republican Party and the Frederick County Republican Party are "undisputably private entities"). As Defendant herself concedes, the Cabarrus GOP is operated pursuant the County Plan. (DE 17 ¶ 13). The State has no governance or control over the Cabarrus GOP.

As such, courts have routinely rejected 42 U.S.C. § 1983 claims against

10

political parties and its members in matters relating to party offices. *See, e.g., Lynch v. Torquato,* 343 F.2d 370, 372 (3d Cir. 1965) ("the normal role of party leaders in conducting internal affairs of their party, other than primary or general elections, does not make their party offices governmental offices or the filling of these offices state action"); *California Republican Party v. Mercier*, 652 F.Supp. 928, 934 (C.D. Cal. 1986) ("Though heavily regulated, the California Republican party is not part of the state government, and its actions are not state actions"); *McMenamin v. Philadelphia County Democratic Executive Committee,* 405 F.Supp. 998, 1003 (E.D. Pa. 1975) ("the filling of [a party office] is not state action or action under color of state law"); *Kay v. New Hampshire Democratic Party,* 821 F.2d 31, 33 (1st Cir. 1987) (political candidate has no right of access to political party's presidential candidate forum since "in holding the forum, the Party was not engaged in governmental activity"); *Banchy v. Republican Party of Hamilton County*, 898 F.2d 1192, 1196 (6th Cir. 1990) ("the Republican Party is not subject to under section 1983 for irregularities in its internal ward chairman elections.").

These holdings are consistent with the general rule that courts do not interfere with the internal affairs of political parties. *See Lee v. Nielsen*, 388 A.2d 1176, 1179 (R.I. 1978) ("As a general rule, the judiciary ought not to interfere with the internal affairs of our political parties."); *Matter of Master v. Pohanka*, 891 N.E.2d 285 (N.Y. 2008) ("Generally, courts will not interfere with the internal affairs of a political party."); *King County Republican Central Committee v. Republican State Committee*, 484 P.2d 387 (Wash. 1971) ("[Historically courts have been

Case 1:22-cv-00597-LCB-JLW   Document 20   Filed 02/03/23   Page 11 of 24

extremely reluctant to take jurisdiction of or interfere in the internal affairs of political parties.").

Plaintiff misleadingly cites several "white primary cases" in support of her argument that the Defendants have engaged in State action. These cases each involve a political party's interference with an *election process*. In *Smith v. Allwright*, 321 U.S. 649, 64 S.Ct. 757 (1944), the Supreme Court held that the refusal of the Texas Democratic Party to allow certain individuals to vote in the primary election on the basis of race constituted state action. *Id*. 663. Similarly, in *Terry v. Adams*, 345 U.S. 461, 73 S.Ct. 806 (1953), the Supreme Court held that acts of a Texas county's Democratic Party in excluding primary voters based on race constituted state action. *Id*. at 462-63. In *Gray v. Sanders,* 372 U.S. 368, 83 S.Ct. 801 (1963), the Supreme Court held that a discriminatory vote-counting scheme of the Georgia Democratic Party in conducting its primary election constituted state action. *Id*. at 374.

These "white primary cases" do not mean that every action of a political party constitutes state action. In *California Democratic Party v. Jones*, 530 U.S. 567, 120 S.Ct. 2402 (2000), the Supreme Court recognized that these cases only hold that a political party's discriminatory action in an *election process* constitutes state action:

> Respondents misplace their reliance on *Smith v. Allright*, 321 U.S. 649, 64 S.Ct. 757, 88 L.Ed. 987, and *Terry v. Adams,* 345 U.S. 461, 73 S.Ct. 809, 97 L.Ed. 1152, which held not that party affairs are public affairs, free of First Amendment protections, see, *e.g., Tashjian v. Republican Party of Conn.,* 479 U.S. 208, 107 S.Ct. 544, 93 L.Ed.2d 514, **but only that, when a State prescribes an election process that gives a special role to political parties, the parties' discriminatory action**

**becomes state action under the Fifteenth Amendment**. This Nation has a tradition of political associations in which citizens band together to promote candidates who espouse their political views. The First Amendment protects the freedom to join together to further common political beliefs, *id.,* at 214–215, 107 S.Ct. 544, which presupposes the freedom to identify those who constitute the association, and to limit the association to those people, *Democratic Party of United States v. Wisconsin ex rel. La Follette,* 450 U.S. 107, 122, 101 S.Ct. 1010, 67 L.Ed.2d 82. In no area is the political association's right to exclude more important than in its candidate-selection process. […] The First Amendment reserves a special place, and accords a special protection, for that process, *Eu, supra,* at 224, 109 S.Ct. 1013, because the moment of choosing the party's nominee is the crucial juncture at which the appeal to common principles may be translated into concerted action, and hence to political power, *Tashjian, supra,* at 216, 107 S.Ct. 544.

*California Democratic Party*, 530 U.S. at 567 (emphasis added); *see also Jacobson v. Kings County Democratic County Committee*, 2018 WL 10228395 (E.D.N.Y.) (Sept. 29, 2018) ("it is only in those rarest of cases where a political party's processes bear a direct impact on the electoral process, such as access to the ballot, that the otherwise private activity of a political party implicates the public affairs of the state warranting intrusion.").

This case has nothing to do with an election process or access to the ballot, and the cases cited by Plaintiff in support of her argument that Defendants are state actors have no application.

Plaintiff also argues that because North Carolina law authorizes county political parties to fill vacancies in certain offices, N.C.G.S. § 163-11, or on a ballot, N.C.G.S. § 163-114, Defendants have engaged in state action by removing Plaintiff from the Executive Committee, which Plaintiff says is "effectively creating a gender

13

gerrymander of the Executive Committee for those times it may be called upon to exercise these statutory powers." (*See* DE 17 ¶ 78). Thus, according to Plaintiff, every action relating to the composition of political parties in any state with laws that afford parties the ability make appointments to vacancies in legislative office[3] must be considered state action, because those actions *might* impact a *possible* legislative office appointment at some unknown date in the future. This would be an absurd result and destroy the wide First Amendment freedoms that are afforded to political parties in organizing and appointing its leadership. *Eu v. San Francisco County Democratic Cent. Committee*, 489 U.S. 214, 229, 109 S.Ct. 1013, 1023 (1989) (the First Amendment's freedom of association "encompasses a political party's decisions about the identity of, and the process for electing, its leaders.")

  This same argument was rejected by the Sixth Circuit in *Banchy v. Republican Party of Hamilton County*, 898 F.2d 1192 (6th Cir. 1990). In *Banchy,* Republican party precinct officers asserted a Section 1983 claim against the county Republican Party and its officers on the grounds that the party had refused to allow them to participate in the election of their ward chairmen. 898 F.2d at 1193. In contending that the Party and its officers had engaged in state action, the plaintiffs pointed to provisions of the Ohio statutes authorizing the county party to fill certain vacancies in legislative office. *Id.* at 1194-1195. However, the Sixth Circuit held that *only when*

---

[3] Most states have laws that authorize major political parties to fill legislative vacancies in office. *See Same-Party Legislative Appointments and the Problem of Party-Switching*, 8 TXAMLR 163, 167-168 (2020) (thirty-one states have instituted appointment processes to fill legislative vacancies, most of which are same-party appointments).

*performing its duties under those statutes* might the party or its officers be engaging in state action:

> **[Plaintiffs] argue that the special powers granted to the county central committees of major political parties by the State of Ohio raises a colorable argument that all the actions of a committee constitute state action. We disagree**. While section 305.02 delegates to the central committees of a state party the power to appoint certain county officials when a vacancy occurs, this does not mean that all actions of a central committee constitute state action. When performing the narrow duties assigned to it under section 305.02, the Central Committee of the Republican Party may well be engaging in state action. *State ex rel. Hayes v. Jennings,* 173 Ohio St. 370, 374, 182 N.E.2d 546 (1962) ("[t]he power conferred by Section 305.02, Revised Code, upon central committeemen makes them public officers"); *see also Smith v. Allwright,* 321 U.S. 649, 663, 64 S.Ct. 757, 764, 88 L.Ed. 987 (1944) ("[t]he party takes its character as a state agency from the duties imposed upon it by state statutes; the duties do not become matters of private law because they are performed by a political party"). **When engaging in party activities, such as electing ward chairmen, distinct from their official governmental duties, the members of the Central Committee do not continue to act under color of state law merely because they have some governmental duties. There must be some allegation that the activities directly influence the governmental duties**.

*Banchy*, 898 F.2d at 1194-1195 (emphasis added).

In sum, to accept Plaintiff's argument that Defendants have engaged in state action in seeking to remove her from the Executive Committee would be contrary to overwhelming authority that actions affecting the internal affairs of political parties is not state action. Plaintiff's Section 1983 claim must therefore be dismissed.

### b. Plaintiff Fails to Plausibly Allege an Equal Protection Claim for Sex Discrimination.

Even if Defendants were state actors, Plaintiff's Section 1983 claim fails

15

because Plaintiff cannot plausibly allege a sex discrimination claim in violation of the Equal Protection Clause.

The Equal Protection Clause commands that "[n]o State shall… deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. This constitutional imperative of equal protection does not entirely remove the States' power to classify but "keeps governmental decisionmakers from treating differently persons who are in all relevant respects alike." *Nordlinger v. Hahn*, 505 U.S. 1, 10, 112 S.Ct. 2326, 120 L.Ed.2d 1, (1992).

"To succeed on an equal protection claim, a plaintiff must first demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." *Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001). "Once this showing is made, the court proceeds to determine whether the disparity in treatment can be justified under the requisite level of scrutiny." *Id*.

Plaintiff does not plausibly allege any facts that Defendants have discriminated against *her* on the basis of sex. Nearly all of Plaintiff's claims relating to alleged "sex discrimination" within the Cabarrus GOP relate to *other women*, not Plaintiff. (*See* DE 17 ¶¶ 38,41, 43-48, 51).

Plaintiff's claims of alleged discrimination against *her* instead relate strictly to the proceedings to remove her from the Executive Committee. (DE 17 ¶ 56). This was a process initiated by 14 individual members of the Executive Committee, not merely the three individual Defendants here. (DE 17 ¶ 56; DE 7, Ex. 3). Then, the entire

Executive Committee considered Plaintiff's removal, and voted to remove Plaintiff on two of the four counts of gross inefficiency. (DE 17 ¶ 69). Plaintiff has failed to allege any plausible facts that could possibly suggest that Defendant's motives in seeking to remove her from the Executive Committee, much less the motives of the other 11 members of the Executive Committee that also signed the notice, were based on Plaintiff's sex.

Indeed, by Plaintiff's own admission, the Cabarrus GOP does not discriminate based on sex, as women *are* placed in leadership positions in the party. (DE 17 ¶ 53). Plaintiff even cites an example of when the Executive Committee *refused* to remove two women from the Committee after being given the opportunity to do so. (DE 17 ¶ 43). Plaintiff cannot plausibly allege that the proceedings to remove her from the Executive Committee, which were joined by 5 women among the individual signors of the notice, were the result of any intentional or purposeful sex discrimination.

Moreover, Plaintiff cannot show that the actions of the individual Defendants resulted in some sex discrimination against her any more than the other 11 other Executive Committee members who signed the letter initiating charges against Plaintiff. Plaintiff make no particular allegations as to Defendant Maguire. Plaintiff's particular allegations against Defendant Lambert relate solely to his presentation of the allegations made against Plaintiff to the Executive Committee at the August 2, 2022 meeting. (DE 17 ¶ 67). For Defendant Ali, Plaintiff alleges that he refused to bring a gift and $10 to a Cabarrus Republican Women's event, and that he otherwise had an alleged negative reaction when he was informed that Plaintiff

was elected as President of the Cabarrus Republican Women. (DE 17 ¶¶ 40, 50). These allegations are not even remotely suggestive of some sex discrimination motive.

Plaintiff's real complaint is that she simply does not believe that the grounds alleged against her rise to the level of gross inefficiency. As such, Plaintiff has the right – as she has already exercised – to appeal the Executive Committee's decision to the State Republican Party. (DE 17 ¶ 70). Yet Plaintiff has curiously elected to indefinitely delay that appeal in favor of this lawsuit, as Plaintiff contends that her appeal cannot be heard while this lawsuit is pending. (DE 17 ¶ 70). Thus, Plaintiff has not even been damaged yet, as the proceedings to remove Plaintiff form the Executive Committee have apparently not yet concluded.

Plaintiff has failed to plausibly allege a claim for sex discrimination under the Equal Protection Clause, and the Section 1983 claim should be dismissed.

II. **The Amended Complaint Fails to State a Claim under 42 U.S.C. § 1985(2) for Obstruction of Justice and Witness Intimidation (Second Claim for Relief).**

Plaintiff has alleged a claim against Defendants under 42 U.S.C. § 1985(2) for obstruction of justice and witness intimidation. Section 1985(2) provides that it is unlawful for two or more persons to conspire "to deter, by force, intimidation, or threat, any party or witness in any court of the United States from attending such court,… or to injure such party or witness in his person or property on account of his having so attended or testified […]". 42 U.S.C. § 1985(2).

The Supreme Court has interpreted Section 1985 narrowly and has held that plaintiffs must establish as an element of the cause of action that the conspirators

18

were motivated by a purpose to discriminate against a recognized class of persons. *Bray v. Alexandria Women's Health Clinic,* 506 U.S. 263, 268–72, 113 S.Ct. 753, 758–60 (1993). This "discriminatory purpose" for purposes of Section 1985, "implies more than intent as volition or intent as awareness of consequences. It implies that the decisionmaker... selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group ." *Id.* at 271–72, 113 S.Ct. at 760 (citation omitted).

Moreover, the law is well settled that to prove a section 1985 "conspiracy," a claimant must show an agreement or a "meeting of the minds" by defendants to violate the claimant's constitutional rights. *See Caldeira v. County of Kauai,* 866 F.2d 1175, 1181 (9th Cir.1989), *cert. denied,* 493 U.S. 817, 110 S.Ct. 69, 107 L.Ed.2d 36 (1989); *see also Lenard v. Argento,* 699 F.2d 874, 882–83 (7th Cir.1983), *cert. denied,* 464 U.S. 815, 104 S.Ct. 69 (1983) (a civil conspiracy under Section 1985 is a combination of two or more persons acting in concert to commit an unlawful act, the principal element of which is an agreement or single plan between the parties to inflict a wrong against or injury upon another). When a plaintiff attempts to assert a conspiracy claim pursuant to Section 1985, the Fourth Circuit has made clear that the purported conspiracy must be alleged in more than just a "conclusory manner," and must include allegations of "concrete supporting facts." *Simmons,* 47 F.3d at 1377. Courts have thus required that plaintiffs alleging unlawful intent in such conspiracy claims "plead specific facts in a nonconclusory fashion to survive a motion to dismiss." *Gooden v. Howard County,* 954 F.2d 960, 969–70 (4th Cir.1992); *see*

*also Jenkins v. Trs. of Sandhills Cmty. Coll.,* 259 F.Supp.2d 432, 445 (M.D.N.C.2003).

Here, Plaintiff, at most, makes conclusory allegations that Defendants Ali and Lambert, together with the Cabarrus GOP, have conspired to injure Plaintiff "in her rights" following the original filing of this action. (DE 17 ¶ 102). This "conspiracy," according to Plaintiff, consists of Defendants Ali and Lambert making remarks to other members of the Executive Committee and other third-parties about this lawsuit. (DE 17 ¶¶ 100, 103-104). Thus, according to Plaintiff, speaking one's mind about a lawsuit in which they have been named a defendant gives rise to a Section 1985(2) claim for obstruction of justice and witness intimidation.

Plaintiff's Section 1985(2) claim falls woefully short of the standard for such claims and must be dismissed.

## III. **The Amended Complaint Fails to State a Claim for Breach of Contract (Third Claim for Relief).**

Plaintiff alleges that Defendants have breached a contract with Plaintiff, citing the County Plan as an alleged "contract" between Plaintiff and Defendants. But the County Plan, which governs the organization of the Cabarrus GOP, is not a "contract." Moreover, Plaintiff is not a party to the County Plan. (DE 7, Ex 1).

Further, even if the County Plan were a "contract," Defendants have not breached the County Plan removing Plaintiff from the Executive Committee. Instead, Defendants, together with the other 11 members of the Executive Committee that signed the letter setting forth charges against Plaintiff, complied with the provisions of the County Plan, as they followed the proper procedure to seek Plaintiff's removal as set forth in the County Plan. (DE 7, Ex. 1).

20

Finally, Plaintiff has not been injured by any supposed "breach" of the County Plan, as Plaintiff's appeal to the State Republican Party of the action of the Executive Committee is still pending. (DE 17 ¶ 70).

## IV.   The Amended Complaint Fails to State a Claim for Defamation (Fourth Claim for Relief).

Plaintiff alleges that the notice furnished to her by Defendants, together with 11 other members of the Executive Committee, was defamatory.  To prevail on a claim of defamation in North Carolina, "a plaintiff must allege and prove that the defendant made false, defamatory statements of or concerning the plaintiff, which were published to a third person, causing injury to the plaintiff's reputation." *Tyson v. L'Eggs Products, Inc.*, 84 N.C.App. 1, 10-11, 351 S.E.2d 834, 840 (1987).

"If a statement 'cannot reasonably [be] interpreted as stating actual facts about an individual[,] it cannot be the subject of a defamation suit." *Daniels v. Metro Magazine Holding Co., LLC*, 179 N.C.App. 533, 539, 634 S.E.2d 586, 590 (2006). Defendant's notice, which sets forth the charges of "gross efficiency" against Plaintiff, are by their very nature Defendant's *opinion* of Plaintiff's conduct. (DE 7, Ex 3). Defendants' statements that Plaintiff acted "in a light that was negative of the Executive Committee," engaged in a "habitual neglect of [her] powers and duties," "worked contrary to the efforts of the Executive Committee," and desired "to work against the [Executive] Committee," are not statements of fact, but the opinions of Defendants.

In addition, Defendants have an absolute privilege as to the statements made during proceedings to remove Plaintiff from the Executive Committee.  In North

Carolina, an absolute privilege applies to communications which are:

> So much to the public interest that the defendant should speak out his mind fully and freely, that all actions in respect to the words used are absolutely forbidden, even though it be alleged that they were used falsely, knowingly, and with express malice.

*Bouligny, Inc. v. Steelworkers*, 270 N.C. 160, 170-71, 154 S.E.2d 344, 354 (1967).

The public policy underlying the absolute privilege "is grounded upon the proper and efficient administration of justice. Participants in the judicial process must be able to testify or otherwise take part without being hampered by fear of defamation suits." *Topping v. Meyers*, 270 N.C.App. 613, 624, 842 S.E.2d 95, 103 (2020). Here, if members of the Executive Committee could be subject to defamation suit for bringing such charges for removal, it would have a chilling effect on members of the Committee ever being permitted to make such charges.

Finally, Plaintiff also cannot show any injury due to the alleged defamatory statements. Taken as a whole, the statements suggest that Plaintiff has refused to work in harmony with the other members of the Executive Committee. (DE 17 ¶ 124). Plaintiff cannot plausibly allege that such statements, standing alone, are injurious to her reputation - especially when Plaintiff has cast the Executive Committee as sexists who constantly criticize and denigrate women, and thus it would be illogical for Plaintiff to align herself with such a group. Further, to the extent such statements could even be considered injurious, the notice expressly provides Plaintiff an opportunity to appear at the August 2, 2022 meeting and dispute the statements, and Plaintiff then has the opportunity to appeal any adverse action to the State

22

Republican Party.[4]

## V.  **The Amended Complaint Fails to State a Claim for Declaratory Judgment (Fifth Claim for Relief).**

Plaintiff alleges a claim for declaratory judgment; however, the issues that Plaintiff asks the Court to "declare" are merely determinations of Plaintiff's other claims for relief.  Plaintiff's declaratory judgment claim therefore fails for the same reasons as Plaintiff's other claims for relief.

## CONCLUSION

Defendant's Motion to Dismiss should be granted, and the Amended Complaint should be dismissed with prejudice.

This the 3rd day of February, 2023.

/s/ *James R. DeMay*
James R. DeMay
N.C. Bar No. 36710
MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC
900 W. Morgan St.
Raleigh, NC 27603
Tel: (704) 941-4648
jdemay@milberg.com

---

[4] Further, while the letter was signed by 14 individual members of the Executive Committee, Plaintiff brings her defamation claim against only 3 of these individual members.  The 3 individual Defendants did not author the letter any more than these other 11 members of the Committee.

23

## WORD COUNT CERTIFICATION

I certify that the foregoing brief complies with the word county limit set forth in L.R. 7.3(d). The number of words in this brief does not exceed 6,250 words.

This the 3rd day of February, 2023.

/s/ *James R. DeMay*